UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAUL F. GIBSON,

    Plaintiff,

v.                                                    CASE NO.: 8:11-cv-1302-T-23TBM

CHASE HOME FINANCE, LLC, et al.,

    Defendants.
_____/

**ORDER**

    Paul F. Gibson alleges (Doc. 34) that Chase Home Finance, LLC, (now merged into JPMorgan Chase Bank, N.A.) wrongfully forced Gibson, a condominium mortgagor, to pay a couple thousand dollars for excessive and duplicative insurance against flood damage.  For himself and on behalf of a putative class, Gibson sues Chase Home Finance and JPMorgan Chase Bank and asserts common law claims for breach of contract, for breach of the duty of good faith and fair dealing, for unconscionability, for conversion, and for unjust enrichment, as well as statutory claims for violation of the Florida Deceptive and Unfair Trade Practices Act, the Real Estate Settlement Procedures Act, and the Bank Holding Company Act.

The complaint is littered with conclusory accusations and legal claims, to which Chase gamely responds with a motion to dismiss (Doc. 38) that rushes through arguments, many of which are relegated entirely to one of the motion's twenty-four footnotes. This order aims primarily to coax the parties to trim and focus the issues.

\* \* \*

Central to this action is the purpose and application of the National Flood Insurance Act (NFIA), 42 U.S.C. §§ 4001 – 29. Under the NFIA, a federally regulated lender cannot lend for the purchase of a condominium unit in a "special flood hazard" area unless the unit is covered by flood insurance "in an amount at least equal to" the lesser of "the outstanding principal balance of the loan or the maximum limit of coverage [] available under the [NFIA]," which for a condominium unit is $250,000. 42 U.S.C. §§ 4012a(b)(1), 4013(b)(2); 44 C.F.R. § 61.6(b); *see Audler v. CBC Innovis Inc.*, 519 F.3d 239, 245 (5th Cir. 2008). No one claims that Gibson's condominium unit was outside a special flood hazard area when the disputed force-placing of flood insurance began.

Although the complaint is at points vague, repetitive, and circuitous, the basic facts alleged are these. In 2007, Gibson purchased a condominium unit with a mortgage that JPMorgan Chase held and that Chase Home Finance serviced. (Henceforth the defendants are referred to collectively as "Chase." The distinction between the two is not material at this stage of the litigation.) Section 5 of the

mortgage (Doc. 34, Ex. 1), which is attached to the complaint, requires Gibson to maintain flood insurance for the unit and states:

> This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires . . . can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to the Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. . . .
>
> If Borrower fails to maintain any of the coverage described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. . . . Borrower acknowledges that the cost of insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

Also attached to the complaint, a rider to the mortgage (Doc. 34, Ex. 3), Section B, provides that Gibson may satisfy the flood insurance requirement with an owners' association policy "satisfactory to the Lender," although only "to the extent" that an owners' association policy provides the coverage that the Lender requires.

Each year Chase requested proof of sufficient flood insurance on Gibson's unit. In 2007, 2008, and 2009, Gibson sent Chase a copy of his building's flood insurance policy, which Chase accepted as proof of sufficient coverage. In March, 2010, Chase rejected the building's flood insurance as insufficient, and a few weeks later Chase forced on Gibson a $250,000 flood insurance policy that in Chase's view raised the coverage on Gibson's unit to a sufficient amount. The annual cost of the policy, $7,680, was charged to an escrow account that Gibson kept with Chase. After the force-placement, Gibson quickly sent Chase another copy of his building's flood insurance policy, and Chase cancelled the additional insurance and removed

- 3 -

the charge from the escrow account. Less than two weeks later – the end of April, 2010 – Chase again charged Gibson for $250,000 in flood insurance, this time for $7,800. In July, 2010, Gibson obtained $147,000 in coverage (cost, $2,015). Chase again cancelled the additional insurance, only to charge Gibson for extra insurance a third time in August, 2010, in this instance for $152,913 in coverage at a cost of $4,697. In early 2011, Chase cancelled the third force-placement but on several occasions asked Gibson for proof of sufficient flood insurance. Chase claimed that Gibson's coverage remained insufficient. The force-placement cycle occurred a final time; Chase listed a $4,742 charge in Gibson's escrow account for flood insurance, removed the charge, and in April, 2011, informed Gibson that his flood insurance was insufficient by $152,913.

In sum, if Gibson's factual allegations are true, Chase repeatedly placed but always removed from Gibson's account a charge for flood insurance, Gibson paid a $2,015 charge for third-party flood insurance, and Chase gained a small sum of interest on money temporarily in Gibson's escrow account. (Doc. 34, ¶ 231) (The claim that Chase gained interest is confusing because Gibson never alleges that he paid a flood insurance charge listed in the escrow account.)

Chase moves to dismiss most claims for lack of jurisdiction on the ground that Chase's reversal of each charge for additional flood insurance leaves Gibson without a redressable injury-in-fact. The argument is unconvincing. Gibson suffers a redressable injury for all but two of the claims if he was and is wrongfully forced to

pay the $2,015 annual charge for flood insurance from a third-party.  The two exceptions are the conversion and unjust enrichment claims, which seek the disgorgement of money that Chase wrongfully gained.  Nominal damages and interest compensate for a temporary conversion or unjust enrichment.  *Montage Group, Ltd. v. Athle-Tech Computer Sys., Inc.*, 889 So.2d 180, 199 (Fla. 2d DCA 2004); 12 Fla. Jur. 2d *Conversion and Replevin* § 33; 18 Am. Jur. 2d *Conversion* §§ 132, 134.  Dismissal of a claim for lack of jurisdiction is not yet warranted.

Gibson orients the complaint around the allegation that Chase repeatedly forced Gibson to purchase more than the NFIA's $250,000 coverage limit in flood insurance.  This seems misguided.  Because the NFIA's main purpose is "to reduce . . . the massive burden on the federal fisc of [] ever-increasing federal flood disaster assistance," *Till v. Unifirst Fed. Sav. and Loan Ass'n*, 653 F.2d 152, 159 (5th Cir. Aug. 7, 1981), "every single federal court to consider whether a federal private right of action arises under section 4012a has concluded that the federal treasury, not individual mortgagors [], is the class the statute intends to protect." *Wentwood Woodside I, LP v. GMAC Commercial Mortg. Corp.*, 419 F.3d 310, 323 (5th Cir. 2005) (citing the Fourth, Fifth, Seventh, and Eighth Circuits); *Custer v. Homeside Lending, Inc.*, 858 So.2d 233, 244-46 (Ala. 2003).  The NFIA, which aims in part to protect development in a flood-prone area, should not deter a lender from operating in a flood-prone area by exposing the lender to a unique private cause of action from

which a lender operating only outside a flood-prone area is free. *See Till*, 653 F.2d at 160-61.

Hence, the NFIA mandates only a minimum amount of flood coverage (the lender must ensure the borrower is insured "at least equal to . . ."). A lender is free to establish by contract a right to require that a borrower hold a larger amount of flood insurance, exactly as the mortgage in this action allows ("insurance shall be maintained in the amounts . . . that Lender requires"). Dept. of the Treasury, et. al, *Loans in Areas Having Special Flood Hazards; Interagency Questions and Answers Regarding Flood Insurance*, 74 Fed.Reg. 35914, 35936 (2009) ("Lenders are permitted to require more flood insurance coverage than required by the [NFIA]. . . . Each lender has the responsibility . . . to protect its ongoing interest in the collateral"); *Custer*, 858 So.2d at 244 ("Congress would not be adverse to the *contractual* procurement of force-placed insurance covering the full value of the property") (emphasis in original).

Gibson asserts that Chase wronged him under the NFIA, but, because the NFIA provides no right to sue, Gibson must rummage through (mainly) state laws searching for one that provides a cause of action. The problem for Gibson is that he suffered no "wrong" under the NFIA. When viewed for what they are – attempts to gain relief for a non-existent wrong under the NFIA – several of Gibson's claims quickly collapse.

To begin with, Gibson alleges no breach of contract. The mortgage requires Gibson to maintain flood insurance in the amount that Chase in its sole discretion

requires, the mortgage allows Chase to purchase flood insurance on Gibson's behalf, and the mortgage warns Gibson that force-placed flood insurance may cost more than the market rate. Arguing that Chase acted unreasonably, Gibson improperly attempts to amend the contract by substituting his judgment of a reasonable amount of flood insurance for Chase's.

In any event, Gibson fails to allege with plausibility that Chase's flood insurance requirement was unreasonable. Ten times the complaint asserts that Gibson's building maintained insurance that covered the full value of Gibson's unit (Doc. 34, ¶¶ 3, 23, 24, 29, 43, 51, 77, 126, 128, 132), but nothing helps a reader assess the assertion's plausibility. A plausible claim enjoys a factual grounding, as in this sentence from Chase's motion to dismiss, "In 2008, the condo association discontinued its [old flood insurance] and purchased a cheaper private flood insurance policy for $10,000,000, which[, because the association includes 103 units,] equals $97,087.39 of coverage per unit." (Doc. 38 at 8) Compare that proposition with one of the ten assertions in the complaint, "the [building's flood insurance policy] . . . covered the full replacement cost of the condominium complex." (Doc. 34 ¶ 132) (emphasis in original). Gibson's sentence is conclusory, added emphasis and nine repetitions notwithstanding.

Chase's elaboration is unnecessary to conclude that Gibson's series of bare protests is implausible. That said, Chase's explanation of the force-placements is detailed, coherent, and consistent. Gibson's unit having only $97,087.39 in coverage

explains why Chase demanded another $152,913. $97,087 plus $152,913 equals $250,000, and, because the mortgage is for nearly $800,000 (Doc. 34, Ex. 1 at 2), $250,000 is apparently the minimum flood insurance that Chase must require Gibson to carry under the NFIA. (Again, the NFIA requires flood insurance covering the lesser of the outstanding principal balance of the loan or $250,000.) Chase was free to demand insurance over that limit to protect comprehensively Chase's investment in Gibson's unit, but the math suggests that Chase attempted to require merely the NFIA minimum. Gibson, meanwhile, provides only unsupported accusation, devoid of fact or detail. Gibson repeats (Doc. 34, ¶¶ 4, 30, 43, 46, 53, 104) the benefit cap under the NFIA, which is misleading, *see Custer* 858 So.2d at 241 n.11, and protests that a "Residential Condominium Building Association Policy" (RCBAP), the type of flood insurance Gibson's building owned, "by its nature" covers the replacement value of each unit, which is false. The Federal Emergency Management Agency, *Mandatory Purchase of Flood Insurance Guidelines* 47 (2007) ("an RCBAP not insured to full value . . . could expose the lender and borrower to unknown risk"). No alleged fact suggests either that Gibson paid for flood insurance greater than the NFIA minimum or that Chase charged Gibson for flood insurance greater than, or even close to, the replacement value of the unit.

To repeat the key point (from a similar action before the Supreme Court of Alabama):

>    the federal requirement that flood insurance be purchased for an amount *at least* equal to the amount of the outstanding loan balance [or $250,000], with no concomitant requirement that borrowers also insure the equity in their homes, does not imply any congressional intention to prevent the lender and borrower from contractually agreeing that there should be insurance coverage for that equity. . . . The [plaintiffs] agreed to keep the property insured against loss ". . . *in such amounts* . . . as may be required by the Mortgagee" and further agreed that the mortgagee could force-place such insurance . . . .

*Custer*, 858 So.2d at 245 (emphasis in original); *see also Kolbe v. BAC Home Loans Servicing, L.P.*, 2011 WL 3665394 at *5, n.2 (D. Mass. 2011) (distinguishing *Hofstetter v. Chase Home Fin., LLC*, 751 F.Supp.2d 1116 (N.D. Cal. 2010), a case Gibson cites repeatedly in the complaint, on the ground that *Hofstetter* never considers whether the plaintiffs' mortgages allow the mortgagee to increase the plaintiffs' flood insurance).

Because Gibson fails to identify a breached contract term, the good faith and fair dealing claim, which requires a breach, is untenable. *Centurion Air Cargo, Inc. v. United Parcel Service, Co.*, 420 F.3d 1146, 1151-52 (11th Cir. 2005). Conversion involves "an unauthorized act which deprives another of his property," *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1291 (11th Cir. 2001), but each of Chase's alleged acts was "authorized" by the mortgage contract. An "enrichment" is "unjust" only if "it would be inequitable for [a defendant] to retain [a] benefit without paying for it." *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006-07 (11th Cir. 2004). The terms of the mortgage and the hollowness of Gibson's conclusory allegations render implausible a claim that Chase received an "inequitable" benefit. Chase demanded and received only that for which Chase contracted and only that to which Gibson –

whom the complaint calls "an experienced real estate agent" – agreed. *See Berry v. Budget Rent A Car Sys., Inc.*, 497 F.Supp.2d 1361, 1369 (S.D. Fla. 2007) (Cohn, J.); *Moynet v. Courtois*, 8 So.3d 377, 379 (Fla. 3d DCA 2009).

The complaint alleges that Chase's ability under the mortgage to impose "additional unnecessary flood insurance" on Gibson renders the mortgage unconscionable. Gibson's claim for unconscionability mistakenly assumes a plausible allegation that Chase imposed "unnecessary" insurance. Regardless, a contract is unconscionable only if "the contract terms are so outrageously unfair as to shock the judicial conscience." *Woebse v. Health Care and Retirement Corp. of Am.*, 977 So.2d 630, 632 (Fla. 2d DCA 2008). That is, "no man in his senses and not under delusion would make [the contract] on the one hand, and [] no honest and fair man would accept [it] on the other." 977 So.2d at 632; *see also Barakat v. Broward County Housing Auth.*, 771 So.2d 1193, 1195 (Fla. 4th DCA 2000). In this case, Gibson suffered annoyance as he dealt with Chase's requests for proof of insurance, Gibson bought about $2,000 in flood insurance he never wanted, and Gibson lost a small sum of interest on money Chase held while waiting for Gibson to prove his flood insurance coverage to Chase's satisfaction. Each "burden" appears either necessary for Chase to comply with the NFIA or indicative of Chase's upholding its "responsibility . . . to protect its ongoing interest in the collateral" of the mortgage. 74 Fed.Reg. at 35936. The flood insurance requirement serves the reasonable purpose of ensuring that – without incurring expensive litigation – Chase both

complies with a federal law and protects a property that secures Chase's loan. No grievance arising from the flood insurance requirement stirs the conscience.

That leaves Gibson's three statutory claims. First, Gibson seeks both money and equitable relief under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Sections 501.201 – 501.213, Florida Statutes, which "provides [] a civil cause of action for unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. 4th DCA 2008). Uselessly stating that "Chase's conduct constitutes false, misleading, and[] deceptive practices," (Doc. 34 at 40) the complaint fails to specify which of Chase's acts purportedly violates FDUTPA.

The complaint's only potential FDUTPA allegation is that Chase's letters to Gibson incorrectly state the NFIA's flood insurance minimum. According to Gibson, the letters state that federal law requires Gibson to maintain flood insurance covering the replacement value of his condominium unit. If this is Chase's purportedly deceptive act, the claim for money under FDUTPA fails. To survive dismissal, Gibson must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Barton*, 988 So.2d at 86. Supposing Gibson is correct that Chase's letters are deceptive, what are the "actual damages"? Even if Gibson need not carry replacement-value coverage under federal law, Chase may require Gibson to carry replacement-value coverage under the mortgage. Chase's alleged

- 11 -

misstatement therefore caused Gibson no loss recoverable under the FDUTPA. *See Barton* 988 So.2d at 86 ("FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment").

The claim for equitable relief under FDUTPA, although more promising, is too vaguely alleged. (Further, briefing on the claim's validity, crushed amid the sundry disputes started by the disarrayed complaint, is incomplete.)

Next, Gibson alleges that Chase violated two provisions of the Real Estate Settlement Procedure Act (RESPA), 12 U.S.C. §§ 2601 – 2617; specifically, Section 2605(*l*), which requires a lender to terminate force-placed insurance within fifteen days of receiving proof of sufficient insurance from a borrower, and Section 2605(m), which requires a lender to charge only a "bona fide and reasonable" price for force-placed insurance. As Judge Altonaga thoroughly explains in *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980, *4-*7 (S.D. Fla. Sept. 19, 2011), Sections 2605(k) - (m) of RESPA, enacted by the Dodd-Frank Act, are not yet in effect.

Finally, Gibson alleges that Chase transgressed two of the anti-tying provisions of the Bank Holding Company Act (BHCA), 12 U.S.C. §§ 1971 – 1979. Sections 1972(1)(A) and (B) of the BHCA prohibit a bank from conditioning credit (in this case, a mortgage) on a borrower's purchase of "some additional credit, property, or service" from the bank or the bank's subsidiary. Gibson argues that Chase violated

Sections 1972(1)(A) and (B) by tying to the mortgage Chase's right to force on Gibson insurance provided by a subsidiary.

Each BHCA anti-tying provision proscribes "the extension of credit on a [tie-in] condition designed to increase the economic power of the bank and to reduce competition." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1346 (11th Cir. 1997). But the BHCA is not supposed "to interfere with the conduct of appropriate traditional banking practices." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 565 (6th Cir. 2003) (quoting *McCoy v. Franklin Sav. Ass'n*, 636 F.2d 172, 175 (7th Cir. 1980)); *Bieber v. State Bank of Terry*, 928 F.2d 328, 330 (9th Cir. 1991); *Palermo v. First Nat. Bank and Trust Co. of Oklahoma City*, 894 F.2d 363, 367 (10th Cir. 1990). A sound bank seeks and ensures sound investments (that is, loans); accordingly, a bank may use economic power to protect an investment if the use is not anti-competitive. *Parsons Steel, Inc. v. First Ala. Bank of Montgomery, N.A.*, 679 F.2d 242, 246 (11th Cir. 1982). "A wide range of conditions placed upon debtors in efforts to protect the investment of the creditor bank" are acceptable. *N.E. Co. v. Bank of Gwinnett County*, 891 F.Supp. 1569, 1575 (N.D. Ga. 1995); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991); *Palermo*, 894 F.2d at 369 ("Section 1972 was not intended to prevent the bank from taking steps to insure adequate security for its loans"); *B.C. Rec. Indus. v. First Nat. Bank of Boston*, 639 F.2d 828, 832 (1st Cir. 1981).

A bank commonly protects an investment by requiring the borrower to insure the loan's collateral. *McClain v. S.C. Nat. Bank*, 105 F.3d 898, 902 (4th Cir. 1997). Gibson's failure plausibly to allege that Chase required flood insurance covering more than a fraction of the replacement value of the unit is once again important to bear in mind. By demanding flood insurance for a portion of the unit's value, Chase protects an investment. Gibson holds a property that secures Chase's large loan, so – naturally – Chase enjoys a contractual entitlement to ensure that Gibson protects that property. In the face of this eminently plausible and proper reason that Chase would require additional flood insurance, Gibson proves unable to explain with plausibility how Chase's alleged actions increase Chase's economic power or harm competition.

Arguing that it gains no economic power from the flood insurance provision of the mortgage, Chase emphasizes that Gibson may choose which insurance carrier provides force-placed coverage. Chase raises an informative case, *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996), *abrogated on other grounds*, *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999), *as recognized*, *Riverview Health Institute LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 516-17 (6th Cir. 2010), in which a bank both required automobile insurance and reserved the right to force-place automobile insurance as a condition on a automobile loan. The plaintiffs argued that the condition violates the BHCA. *Kenty* disagrees:

> the Bank did not require that the plaintiffs purchase any insurance
> through it or [another specific company]. Indeed, the plaintiffs were
> free to purchase insurance on the open market at fully competitive
> prices. In a sense, the Bank was willing to compete with other providers
> of insurance and thus it is hard to see how this practice can be
> considered anti-competitive.

92 F.3d at 395. Nothing in Gibson's papers sufficiently explains how requiring flood insurance from a third-party "benefits [Chase] in some way other than merely allowing [Chase] additional asset protection." *Palermo*, 894 F.2d at 368-69.

Rather, Gibson argues that he had no realistic opportunity to cover the unit with enough third-party insurance to satisfy Chase. That claim remains implausible until Gibson provides factual allegations – as opposed to bare conclusions – showing the flood insurance coverage on his unit. Further, Gibson fails to allege facts establishing that American Security Insurance Company, which provides flood insurance if one of Chase's borrower fails to buy third-party insurance, is Chase's "subsidiary" as that term is defined in the BHCA.

Also, Gibson fails to reasonably explain how Chase's force-placing flood insurance causes a competitive harm. Although a BHCA plaintiff need not allege a tie's "specific adverse effects on competition," *Parsons Steel*, 679 F.2d at 245, a plaintiff must allege that the tie could harm competition. *Palermo*, 894 F.2d at 368. An effective tying arrangement harms competition in the market for the tied product – in this case, the market for flood insurance. *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502-03 (11th Cir. 1985); *Nat'l Souvenir Ctr., Inc. v. Historic Figures,*

*Inc.*, 728 F.2d 503, 510 (D.C. Cir. 1984) ("the evil of a tying arrangement is that it allows a seller who has monopoly power in the tying product market to use it as leverage to gain a share of the tied product market"). Gibson admits he would not on his own purchase the insurance that Chase forced on him. "When a purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied-product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 16 (1984), *abrogated on other grounds, Ill. Tool Works Inc. v. Ind. Ink, Inc.*, 547 U.S. 28 (2006); *see also Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1305 (8th Cir. 1997).

Gibson objects that the BHCA claim requires "fact-based inquiries that are not appropriate for a motion to dismiss," but no "fact-based inquiry" is warranted if Gibson asserts an untenable claim. The claim is not defective because of a lack of discovery; the claim is defective because Gibson fails to allege that paying a Chase "subsidiary" was necessary to obtain credit and Gibson presents no theory that, if the facts in the theory are true, plausibly explains how Chase's alleged actions could help Chase or harm competition.

\* \* \*

The motion (Doc. 38) to dismiss is **GRANTED**. Gibson's unconscionability and RESPA claims (Counts II and V) are **DISMISSED WITH PREJUDICE**. Each

other claim (Counts I, III, IV, VI, and VII) is **DISMISSED WITHOUT PREJUDICE**. Gibson may submit a second amended complaint by **January 6, 2012**.

A point in closing. No one benefits from a needlessly swollen complaint. Gibson could eliminate redundancy and lose nothing pertinent – indeed, a leaner and less disjointed complaint might gain plausibility. Added detail may enlighten; repetition will not.

ORDERED in Tampa, Florida, on December 16, 2011.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE